**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Allen JESSUP, Defendant–
Appellant.**

**No. 91–6296.**

United States Court of Appeals,
Tenth Circuit.

June 11, 1992.

letter of credit was extinguished when the letter    expired.

Edward J. Kumiega, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., with him on the brief), for plaintiff-appellee.

Susan M. Otto, Acting Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Before BALDOCK, Circuit Judge, BRORBY, Circuit Judge, and BELOT, District Judge.[*]

BELOT, District Judge.

James Allen Jessup (Defendant) appeals his sentence alleging the trial court erred by using illegally obtained evidence to deny him credit under the sentencing guidelines for acceptance of responsibility. We hold the sentencing court did not err in denying Jessup a two point reduction for acceptance of responsibility.

Jessup was employed as a truck driver for an interstate trucking company. He met a fourteen year old male juvenile, J.E.P., at a truck stop in Kentucky on November 18, 1990. Jessup gave J.E.P. a ride in his truck and transported him back to Jessup's mother's home in Oklahoma. During the journey, Jessup and J.E.P. engaged in oral sex and mutual masturbation. Upon arrival in Oklahoma, Jessup bought J.E.P. a one-way bus ticket to J.E.P.'s parents' home in Louisiana. J.E.P. ran away a week later and hitchhiked back to Oklahoma. He contacted Arnold Carter, a friend of Jessup's, who took him to the truckstop where Jessup worked.

Jessup and J.E.P. left Oklahoma for California on December 2 and returned on December 10, 1990. During the trip Jessup and J.E.P. engaged in sexual activity. On December 13, the pair left Oklahoma for New York. On December 14, they were detained by security officers at a truckstop near Joplin, Missouri. J.E.P. told a securi-ty officer he had travelled with Jessup through several states and they were engaging in sexual activity daily.

Jessup was arrested and indicted in the Western District of Missouri for violating the provisions of the Mann Act, 18 U.S.C. § 2423, by transporting a minor, J.E.P., across interstate lines for the purpose of engaging in prohibited sexual contact. He was released on bond. The indictment was dismissed on March 7, 1991, and a complaint alleging the same offense was filed in the Western District of Oklahoma the next day. Jessup was subsequently indicted in Oklahoma on April 4, 1991. The court ordered Jessup released on bond, but ordered him to submit to drug tests, psychological evaluation, and blood tests for the Acquired Immune Deficiency Syndrome (AIDS) virus. The test results were positive for the AIDS virus and the results were disclosed to Jessup and the government.

During the course of further investigation, the government learned from J.E.P. that Jessup had engaged in anal and oral sex with other male juveniles. Some of the sexual encounters with one of the juveniles occurred while Jessup was on bond from the Western District of Missouri. The government approached Arnold Carter, who initially denied any knowledge of Jessup's sexual involvement with other juveniles, but disclosed the information after an FBI agent informed him that Jessup "had AIDS". The allegations of additional sexual conduct were included in paragraphs 8, 9, and 10 of the presentence report. Jessup filed a written objection to the inclusion of this information in the report.

Jessup pled guilty to the charge on August 15, 1991. At his sentencing hearing, the court assumed the information contained in paragraphs 8, 9, and 10 was obtained illegally, but ruled the information was not prohibited from use in a sentencing decision. The court sentenced Jessup to a term of 30 months imprisonment and

[*] Honorable Monti L. Belot, United States District Judge for the District of Kansas, sitting by designation.

two years of supervised release following his release from imprisonment. .

**■▌▌** At issue in this case is whether a district court may deny credit for acceptance of responsibility when the information relied on by the court was obtained in violation of state law. At the time sentence was imposed, Oklahoma law prohibited the disclosure of the identity of any person having a communicable disease. Okla.Stat. tit. 63, § 1–502.2(A) (West 1990).[1]

**■▌▌** The burden of proof for establishing entitlement to a reduction of the offense level for acceptance of responsibility is on the defendant. *United States v. Rogers,* 899 F.2d 917, 924 (10th Cir.), *cert. denied* — U.S. ——, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990). The defendant must meet his burden by a preponderance of the evidence. *Id.* Generally, the standard of review of an "acceptance of responsibility" determination under the guidelines is the "clearly erroneous" standard. *U.S. v. Spedalieri,* 910 F.2d 707, 712 (10th Cir.1990). However, the district court's determination that illegally obtained information can be considered for sentencing purposes is a legal conclusion requiring this court to apply certain legal principles. Hence, the issue is primarily a legal one for which a *de novo* standard of review is appropriate. *U.S. v. Roberts,* 898 F.2d 1465, 1469 (10th Cir. 1990).

Congress has authorized a broad review of an offender's background for determination of the appropriate sentence. 18 U.S.C. § 3661 provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Congress intended that offenders be sentenced according to their individual circumstances and characteristics. Jessup's continued behavior of sexually molesting young boys following his arrest and indictment is indisputedly relevant to the question of whether he manifested an acceptance of responsibility for his actions. Jessup did not deny the accuracy of the information in the presentence report.

This circuit has followed the approach of balancing the effect of applying the exclusionary rule[2] at sentencing against the costs of impairing effective and suitable punishment of proven offenders and unduly complicating sentencing procedures. *See United States v. Graves,* 785 F.2d 870, 873 (10th Cir.1986) (pre-sentencing guidelines case). As a general rule, the *Graves* court believed the extension of the exclusionary rule to sentencing proceedings would have an insignificant deterrent effect and would intolerably delay and disrupt sentencing proceedings by requiring the sentencing judge to determine whether every item of information relied on had a lawful origin. *Id.* ..

Other circuits have considered the question of extending the exclusionary rule to the sentencing context. In *U.S. v. McCrory,* 930 F.2d 63 (D.C.Cir.1991), the district court considered evidence excluded at trial of large quantities of crack cocaine, money, guns, and jewelry seized in a search of the defendant's apartment. The court analyzed the issue in terms of "whether the deterrent effect achieved will outweigh the detrimental effects of excluding the reliable evidence on the court's ability to achieve the goals of appropriate sentencing." 930 F.2d at 69. The court held the deterrent effect did not outweigh the detrimental effect of excluding the evidence. 930 F.2d at 69. Central to the court's holding was its belief that, absent a showing of a purposeful design to obtain evi-

---

1. Oklahoma enacted legislation in 1991 requiring that all persons arrested for sex crimes be tested for the AIDS virus and that the victim(s) be notified of the test results. Okla.Stat. tit. 63, § 1–524(A–C) and Okla.Stat. tit. 63, § 1–525(A–B) (1991). Consideration of the amendment is unnecessary to the disposition of this case.

2. The court will assume, without deciding, that the FBI agents' actions in disclosing the information to Carter were contrary to statute.

dence to increase a defendant's base offense level at sentencing, the police misconduct was insufficient to justify interference with individualized sentencing.[3]

In *Verdugo v. United States*, 402 F.2d 599, 611–13 (9th Cir.) *cert. denied* 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1968), the court held that where the use of evidence obtained in violation of the Fourth Amendment provided a substantial incentive for unconstitutional searches and seizures, the evidence should be excluded from consideration at sentencing. However, the Ninth Circuit has since cautioned that the *Verdugo* holding has a narrow scope and requires exclusion only when the use of illegally seized evidence provides a substantial incentive for illegal searches. *United States v. Vandemark*, 522 F.2d 1019, 1022–25 (9th Cir.1975).

In the case at bar, the government obtained the information of Jessup's medical condition through a court order directing Jessup to submit to a blood test as a condition of his bond. The constitutionality of this order is not disputed. *See Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1833–34, 16 L.Ed.2d 908 (1966). Upon learning that other juveniles had been exposed to the AIDS virus, the government acted to determine the identity of the juveniles. FBI agents initially attempted to ascertain their identity without revealing Jessup had the AIDS virus, but when Carter denied any knowledge of the other juveniles, the agents revealed the information in an effort to induce Carter to cooperate.

Application of the exclusionary rule in this case is not warranted. There is no evidence that the agents' actions were intended to secure an increased sentence for the defendant. Indeed, there is nothing in the record which suggests that the agents' actions were motivated by any purpose other than to learn the identity of other juveniles who may have been exposed to the AIDS virus through sexual contact with the defendant. Under these circumstances, no deterrent effect would be achieved by

holding that the district court erroneously considered the evidence of the defendant's continued misconduct.

The district court properly considered Jessup's continued conduct following his arrest of engaging in prohibited sexual acts. Its denial of a two point reduction for acceptance of responsibility is AFFIRMED.

---

**3.** The *McCrory* court left open the question whether suppression would be necessary in the sentencing phase upon a showing of egregious police misconduct. 930 F.2d at 69.