70 F.3d 638
 315 U.S.App.D.C. 77
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Neil DOUGLAS, Appellant.
 No. 94-3145.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 25, 1995.
 
 Before: WALD, SILBERMAN, and ROGERS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal from a judgment of the United States District Court for the District of Columbia, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 94-3145, the judgment of the United States District Court for the District of Columbia is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 41(a).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Neil Douglas appeals from his conviction of distribution of more than five grams of crack cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B)(iii). Douglas contends that video and audio tapes were improperly introduced into evidence at his trial, and that police photographs of him which were allegedly taken under threat of arrest were improperly introduced as well. The District Court denied Douglas' motion for a new trial. We affirm his conviction.
 
 
 5
 On November 10, 1992, Officer Gregory Moss purchased 7 grams of crack cocaine from Douglas, as part of an undercover operation in the 3900 block of 14th Street, N.W. Officers videotaped a portion of the meeting between Officer Moss and Douglas, though they did not record the actual drug transaction. On November 16, Moss returned to the same area, where he talked briefly with Douglas, making an audio tape of the conversation via a hidden recording device. The tape contained no mention of drugs or the previous transaction.
 
 
 6
 Douglas was arraigned on December 22, 1992, and was subsequently unable to post bail. Soon after arraignment, defense counsel met with the Assistant United States Attorney assigned to the case, but was not told of the existence of any tapes. On May 12, 1993, defense counsel sent a follow-up letter to the prosecutor, again inquiring about the existence of tapes, but received no response. Trial was scheduled for July 14, 1993.
 
 
 7
 A week before trial, defense counsel learned that a new Assistant United States Attorney had been assigned to the case. In a July 9 telephone conversation, the new prosecutor informed defense counsel of the existence of the tapes. Counsel filed a motion pursuant to FED.R.CRIM.P. 16(d)(2) asking that the tapes not be admitted at trial, but did not request a continuance. At a hearing on July 14, before the trial commenced, the District Court questioned the original prosecutor on his reasons for not disclosing the tapes. The prosecutor provided no real explanation, offering only that it was not in "bad faith." Subsequently, the District Court denied the defense motion to suppress the evidence, finding that there was no deliberate misconduct by the government and that "the late production of the tapes did not prejudice defendant...."
 
 
 8
 We review the decision of the District Court not to suppress the tapes for abuse of discretion. See United States v. McCrory, 930 F.2d 63, 70 (D.C.Cir.1991), cert. denied, 502 U.S. 1037 (1992). Although a large part of the District Court's reasoning appeared to focus on whether the prosecutor's actions were "deliberate misconduct" or merely negligent, the court did determine that the violation did not cause Douglas to suffer prejudice to his substantial rights. Cf. id. at 69-70.
 
 
 9
 Defense counsel decided not to request a continuance after being informed of the existence of the tapes. A continuance is, generally, a useful sanction for a discovery delay, because it gives the defense adequate time to prepare a response to new information and evidence. See United States v. Ecueda-Hernandez, 768 F.2d 1307, 1313 (11th Cir.1985). On the other hand, Douglas had been in detention for more than seven months and defense counsel suggested that he doubted the efficacy of a continuance at that point, believing it unlikely that any witnesses would recall the night of November 10-an otherwise uneventful date. While defense counsel's decision here not to request a continuance does not conclusively establish that the discovery violation was not prejudicial, it definitely undercuts that argument. Although counsel argues that timely production of the video tape might have allowed him to identify and contact individuals depicted on the tape for possible assistance with the defense, he provides no indication beyond speculation how their testimony (even if it came shortly after the arrest when their memories were more fresh) would have in fact aided the defense. Thus, Douglas' claim that the discovery violation was prejudicial to his rights is too conjectural. In the absence of a stronger showing that the outcome of this trial would have been different had the tapes been timely disclosed, it was not an abuse of discretion to deny Douglas' motion for a new trial.
 
 
 10
 In finding no violation of Douglas' substantive rights, we do not mean in any way to excuse the conduct of the Assistant United States Attorney originally assigned to this case. His failure to disclose the tapes--inadvertent or not--was clearly a violation of the Rules of Criminal Procedure, was at best negligent, and brings no credit to the Office of the United States Attorney.
 
 
 11
 Douglas also argues that he was prejudiced by the introduction of several police photographs of him. The photographs were admitted at trial without objection, and Officer Moss testified that he had used the photographs to familiarize himself with Douglas before commencing undercover operations. Counsel explains that several months after trial Douglas told him that the photographs had been taken in late September or early October, 1992, after the police threatened to arrest him in connection with a homicide unless he allowed himself to be photographed, and thus these photographs could have been the subject of a suppression motion at trial due to their origin.
 
 
 12
 But Douglas has not made the requisite showing for a new trial on the basis of the photographs. In the first place, counsel has not demonstrated that the origin of these photographs could not have been discovered before trial--after all, his client knew how the photographs were procured. And more importantly, this evidence was not "of such nature that in a new trial it would probably produce an acquittal." See Thompson v. United States, 188 F.2d 652, 653 (D.C.Cir.1951). Given the direct, unrebutted testimony of Officer Moss that he purchased cocaine from defendant Douglas, it is highly unlikely that exclusion of the photographs would have changed the outcome of this case.
 
 
 13
 Douglas also asserts that testimony on citizen complaints--in conjunction with the photographs--created the impermissible inference that citizens had identified him as a drug dealer. We find that the District Court correctly allowed this testimony, which was not initially objected to by counsel, and which was used for the limited purpose of explaining the origins of a police investigation. See United States v. Brown, 923 F.2d 109, 111 (8th Cir.1991), cert. denied, 502 U.S. 833 (1991).
 
 
 14
 In addition, we note that Douglas, in arguing that the prosecutor improperly introduced evidence of his national origin, has presented a situation substantially different from the one we faced in United States v. Doe, 903 F.2d 16, 21-22 (D.C.Cir.1990). In Doe, the prosecutor elicited testimony from a detective that the local drug market "has been taken over basically by Jamaicans," the prosecutor frequently adverted to "the Jamaicans," and in closing arguments repeated that Jamaicans had "taken over" the local drug traffic--comments which crossed the line between "evidence [and] emotion." Id. at 18, 25. Given the strength of the evidence against Douglas and the limited nature of the testimony concerning his national origin, the trial court did not err in denying Douglas' motion for a new trial.
 
 
 15
 For the foregoing reasons, we affirm the conviction.