UNITED STATES of America,
Plaintiff–Appellee,

v.

Sabrina JENKINS (91–3553); Reginald Peacock (91–3554); Michael Warren (91–3555); Vincent Sample (91–3562); Michael Brown (91–3563); Ned Warren, III (91–3564); and Ralph D. Warren (91–4129), Defendants–Appellants.

Nos. 91–3553 to 91–3555, 91–3562 to 91–3564 and 91–4129.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 17, 1992.

Decided Aug. 20, 1993.

Rehearing En Banc Denied in Nos. 91–3554, 91–3564, and 91–4129 Oct. 21, 1993.

Joseph R. Wilson, Asst. U.S. Atty., Thomas A. Karol, Asst. U.S. Atty. (briefed), Office of U.S. Atty., Western Div., Toledo, OH, for plaintiff-appellee.

Richard A. Nystrom (argued and briefed), Dayton, OH, for defendant-appellant Michael Joseph Warren.

Douglas A. Wilkins (argued and briefed), Toledo, OH, for defendant-appellant Reginald Peacock.

Gordon A. Senerius (argued and briefed), Toledo, OH, for defendant-appellant Sabrina Jenkins.

E. Winther McCroom (argued and briefed), Breckenridge & McCroom, Youngstown, OH, for defendant-appellant Vincent Sample.

Mark D. Berling (briefed), Toledo, OH, for defendant-appellant Michael Brown.

Michael G. Dane (argued and briefed), Federal Public Defender's Office, Cleveland, OH, for defendant-appellant Ralph Darrell Warren.

William S. O'Brien (argued and briefed), Findlay, OH, for defendant-appellant Ned Warren, III.

Before: KEITH and SUHRHEINRICH, Circuit Judges, and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

Following trial by jury, defendants Ralph Warren; Ned Warren, III; Michael Warren; Michael Brown; Sabrina Jenkins; Reginald Peacock; and Vincent Sample were convicted of conspiracy to distribute cocaine under 21 U.S.C. §§ 846 and 841(b)(1)(B). Six defendants were convicted of substantive counts relating to the possession and sale of cocaine under 21 U.S.C. § 841 and 18 U.S.C. § 2. Ralph Warren was also convicted of engaging in a continuing criminal enterprise under 18 U.S.C. § 848;[1] firearms charges under 18 U.S.C. §§ 922 and 924; and possession of cocaine with intent to distribute within 1000 feet of an elementary school under 21 U.S.C. §§ 860 and 841(a)(1).

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The district court subsequently vacated Warren's conspiracy conviction because of his continuing criminal enterprise conviction. *United*

*States v. Davis*, 809 F.2d 1194, 1204–5 (6th Cir.), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987) ("Congress did not intend continuous criminal enterprise and conspiracy charges to be subject to double punishment.").

Defendants were indicted along with six other persons in a 27–count indictment in October 1989. The court conducted two two-month trials, first in 1990, and then again in 1991 after the jury was unable to reach a unanimous verdict on all of the counts. Defendants raise numerous issues on appeal, most of which do not merit publication under Rule 24(a) of the Sixth Circuit Court of Appeals. Those issues are addressed and decided in the unpublished appendix to this opinion. We limit our discussion below to the following issues: whether the district court erred in refusing to order the disclosure of a confidential informant; whether the enhanced sentence of life imprisonment was properly imposed for Ralph Warren's violation of 21 U.S.C. § 860; whether the exclusionary rule prohibits consideration of illegally seized cocaine in the calculation of a defendant's offense level under the sentencing guidelines; and whether a conspirator is properly found accountable for the full amount of the drugs involved in the conspiracy based solely on a finding that the amount involved was foreseeable to him.

## I.

### Confidential Informant

Ralph Warren, Reginald Peacock and Vincent Sample claim that the district court erred in refusing to order the disclosure of the identity of a confidential informant. The informant accompanied undercover detectives on three occasions to purchase drugs from defendant Michael Brown. On the first two occasions, the informant merely drove the detectives to Brown's house. On the third occasion, the informant again drove to Brown's house with the detectives, and then, at Brown's direction, to two other locations so that Brown could obtain cocaine. Both undercover detectives testified that during this drive, Brown stated: that he was just with Ralph and "he sold an ounce and a half and they had two kilos"; that the "house on Melrose is Ralph's, and that's where the rocks are at and it is being run by Reggie Peacock"; and that "Ralph was his main man, and he didn't like doing business with Peanut [Ned Warren]." Brown testified at

trial and denied making the statements attributed to him by the detectives.

The role of the informant was extremely limited. There was no evidence of any attempted drug purchase by the informant, nor of any conversations between the informant and the defendants. The informant merely drove the car as directed by Michael Brown. While driving the car, however, he was presumably in a position to hear Brown's statements regarding Ralph Warren and Peacock.

With the undercover detective present, the district judge conducted an in camera interview of the informant during the first trial, and asked him questions that had been submitted by the defendants. Peacock did not submit any questions. The judge took notes, and read the questions and answers into the record. The judge offered to read the interview to the jury if all defendants agreed. Since they did not all agree, this was not done. The court refused to require the government to disclose the informant's identity, and stated:

> Except perhaps for one question and answer in that entire interview, this interview corroborates [the detective] in very important respects, even down to the amount of money that he received as an informant.
>
> . . . .
>
> I make this very positive finding, that it would not assist the defendants, on the contrary it would confirm [the detective's] testimony at all of the important points, certainly, every aspect of the various transactions he confirmed.

> There is only one point at which there might be any help to Ralph Warren, and that is this question and answer . . . "What, if anything, do you recall Michael Brown saying in the car about Ralph Warren?"

> And the answer, and I have it in quotes "I don't remember him in my presence mention Ralph Warren."

The court stated that it would allow any defendant to cross-examine the detective on the informant's failure to remember Brown's statements about Ralph Warren. "And counsel is entitled to use that or any other

part of that interview in cross-examination of [the detective]."

The Supreme Court has recognized the government's privilege not to reveal the identity of persons who furnish information regarding violations of the law. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege is especially important in the enforcement of controlled substance laws where there is usually no complaining witness. *United States v. Lloyd,* 400 F.2d 414, 415 (6th Cir.1968). The privilege has limits, however. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 628.

■■■ We review the district court's refusal to order the disclosure or production of the confidential informant under an abuse of discretion standard. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir.1992) (citing *Dorsey v. Parke,* 872 F.2d 163, 166 (6th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989)). The Sixth Amendment does not require the government to call every witness competent to testify, including special agents or informants. *Moore,* 954 F.2d at 381. If the evidence on which the defendant was convicted was obtained personally by the government agents who did testify, the government is not required to produce the cooperating individual. Mere invocation of the right to compulsory process does not automatically outweigh the public interest in protecting confidential informants. "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *Id.*

■■■ The district court found that in every respect save one, the informant would have corroborated the undercover detectives' testimony. The question is whether the district court was required to order the disclosure of the informant's identity in light of its acknowledgement that the informant's failure to remember Brown's statements about Ralph Warren might have been of help to Warren. The answer to this question is no. The district court correctly accommodated the government's privilege to protect the identity of its informant with any interest Warren might have had in personally interrogating the informant.[2]

Essential to our determination is the fact that Warren was not prohibited from presenting to the jury the fact that an informant who was present to hear Brown's alleged statements about him did not recall those statements. This was the only subject on which the informant could have been of help, and Warren makes no persuasive showing to the contrary. The court stated that it would permit Warren to cross-examine the undercover detective on the informant's inability to remember the contested statements. This, coupled with the fact that Brown himself denied making the statements, was sufficient to address the issue of whether the statements had in fact been made. Moreover, while the court allowed defendants to explore the informant's faulty memory through cross-examination of the detective, the court stated that the government would not be allowed to examine the detective on redirect to establish those facts which the informant did remember.

We remain mindful of the Supreme Court's admonition in *Roviaro:*

> [N]o fixed rule with respect to disclosure of an informant's identity is justifiable. The problem is one that calls for *balancing* the public interest in protecting the flow of information against the individual's right to prepare his defense. *Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the in-*

---

**2.** Sample advances no basis for his contention that the informant's testimony would have aided his defense. Peacock chose not to submit any questions to the informant, and cannot now rely on this failure to support the proposition that the informant's testimony might have been helpful to him. Moreover, the informant was in a position to hear only one statement by Brown about Peacock, that Peacock ran the crack house on Melrose. This statement was directly corroborated by the testimony of unindicted co-conspirator Robert McCoy.

*former's testimony, and other relevant factors.*

353 U.S. at 62, 77 S.Ct. at 628 (emphasis added). We believe that the district court struck the proper balance and conclude that the court did not abuse its discretion in refusing to require the disclosure of the informant's identity.

## II.

### Statutory Sentencing Issues

Ralph Warren challenges his sentence to life imprisonment for his conviction of the offense charged in count 8, possession of 112 grams of cocaine with intent to distribute within 1000 feet of an elementary school, in violation of 21 U.S.C. §§ 841(a)(1) and 860. This enhanced sentence was imposed because Warren had two prior state law drug felony convictions. Warren's challenge presents two issues: 1) whether a term of life imprisonment is required for a conviction of § 860 where the defendant was previously convicted of two drug felonies under statutes other than § 860; and 2) whether Warren is barred from challenging the constitutionality of his 1981 conviction under 21 U.S.C. § 851(e). We answer both questions in the affirmative.

### A. Construction of 21 U.S.C. §§ 860 and 841(b)(1)(A

■ Section 860(a) sets forth the penalty for violations of 21 U.S.C. § 841(a)(1) which occur within 1000 feet of certain institutions. In general, that penalty is twice the maximum punishment and twice the term of supervised release provided for in 21 U.S.C. § 841(b).[3] However, the reference in § 860(a) to twice the penalty imposed by § 841(b) is expressly subject to the terms of 21 U.S.C. § 860(b), which allows for greater penalties.

Section 860(b) first sets forth the penalty applicable to a person who violates § 841(a)(1) by possessing a controlled substance with intent to distribute within 1000

feet of one of the listed institutions, *"after a prior conviction under subsection (a) [§ 860(a)] of this section has become final...."* (Emphasis added.) Thus, by its terms, the first part of § 860(b) applies only to defendants who are twice convicted of § 860(a). Section 860(b) concludes: "Penalties for third and subsequent convictions shall be governed by section 401(b)(1)(A) [§ 841(b)(1)(A) ]." Warren contends that this language must be read in conjunction with the earlier reference in § 860(b) to a prior conviction under § 860(a). If these sentences are read together, he claims, only third and subsequent convictions *for violations of § 860(a)* result in the harsh penalties imposed by § 841(b)(1)(A).

The construction to be given to the last sentence of § 860(b) is clear from the provisions of § 841(b)(1)(A), to which § 860(b) expressly refers. In pertinent part, § 841(b)(1)(A) states:

If any person commits a violation of this subparagraph or of section [859] [distribution to persons under age 21], [860] [distribution near schools], or [861] [employment of persons under age 21] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.... For purposes of this subparagraph, the term "felony drug offense" means ... a felony under any law of a State ... that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances.

This language clearly provides that a person who violates § 860 after having been convicted of two prior drug felonies, under certain federal laws or the state laws identified above, are subject to the penalty provisions of § 841(b)(1)(A). Nothing in the language of § 860(b) or § 841(b)(1)(A) requires that the predicate offenses under the latter section be offenses under § 860(a). *See United States v. Blackwood,* 913 F.2d 139, 147 (4th Cir.1990), where the court noted

---

**3.** Section 841(b), in turn, imposes penalties based on the amount of drugs involved in the conviction. Because Ralph Warren's conviction on count 8 involved 112 grams of cocaine, sub-

section (C) of § 841(b)(1) would apply if there were no other statutory directives to consider, and would result in a 60–year sentence.

that "Congress denominated § 6452 of the Anti–Drug Abuse Act, which created this mandatory life sentence, 'Life in Prison for *Three–Time* Drug Offender.'" (Emphasis in original.) We therefore conclude that a term of life imprisonment is mandated under §§ 860(b) and 841(b)(1)(A) so long as the two necessary drug felony predicate offenses are established, and that these offenses need not be violations of § 860 as Warren contends.

### B. Use of Prior Convictions for Sentence Enhancement

■ The procedures for establishing prior convictions for purposes of sentence enhancement are set forth in 21 U.S.C. § 851, enacted in 1970. That statute requires the government to file an information stating the prior convictions to be relied upon. 21 U.S.C. § 851(a). A person claiming that a conviction is invalid must file a written response to the information. The factual bases for a challenge to the constitutionality of a prior conviction must be set forth in the response, and the defendant bears the burden of proof by a preponderance of the evidence on any issue of fact raised in his response. 21 U.S.C. § 851(c). Subsection 851(e) provides that no person may challenge the validity of any conviction which occurred more than five years before the date of the information alleging the prior conviction.

The government filed the information required by § 851(a), establishing that Warren had been convicted of drug felonies under Ohio law in 1981 and 1986. At sentencing, Warren contended that his 1981 conviction should not be used for sentence enhancement

because he was not afforded effective assistance of counsel, and that a search for other alleged constitutional errors was not possible because the court reporter's notes had been partially destroyed.[4] Warren states that his only other "enhancement-usable conviction" was the result of his guilty plea in 1986 to a drug misdemeanor under Ohio law which was elevated to felony status by virtue of his 1981 conviction.

The court concluded that the five-year limitation in § 851(e) barred Warren's challenge to his 1981 conviction. The court found that § 851(e) was wholly reasonable both to effectuate the purposes of sentence enhancement for recidivists and to eliminate a host of problems with respect to ancient or destroyed records. *Cirillo v. United States,* 666 F.Supp. 613, 616 (S.D.N.Y.1987). The court further found Warren's complete failure to exhaust his state remedies to be an additional reason for rejecting Warren's objections to the use of the convictions for sentence enhancement.[5]

We agree with the district court's conclusion that § 851(e) bars Warren's challenge to his 1981 conviction, as it occurred nearly 10 years before the government filed its information under § 851(a). While Warren made a general objection to application of § 851(e) at sentencing, he advances no arguments[6] to this court against application of the time limitations of § 851(e). We therefore conclude that Warren's prior felony drug offenses were properly used for sentence enhancement and affirm his sentence.

---

4. Warren cites *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.1989), *cert. denied,* 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990), in support of the suggestion that he should benefit from the absence of a complete stenographic record of the 1981 trial. This is contrary to 21 U.S.C. § 851(c). Moreover, *Dunn* has been disapproved by the Supreme Court in a case which upheld a statutory sentence enhancement procedure which operates to impose the burden of producing evidence of the invalidity of a prior conviction on the criminal defendant, even if records essential to a determination of the claim may have been destroyed or lost. *Parke v. Raley,* — U.S. —, — – —, 113 S.Ct. 517, 523–25, 121 L.Ed.2d 391 (1992).

5. The district court held a hearing and thoroughly investigated Warren's claims, finding that no claim of ineffective assistance of counsel nor any other constitutional claim attacking the validity of the 1981 conviction had ever been made prior to the sentencing hearing in 1991. The court noted that Warren did not question the competency of his 1986 counsel and that the 1986 guilty plea was entered at a time when the stenographic notes of the 1981 trial were presumably intact.

6. Section 851(e) has been held to be constitutional. *United States v. Williams,* 954 F.2d 668, 673 (11th Cir.1992); *Cirillo v. United States,* 666 F.Supp. 613, 616 (S.D.N.Y.1987).

**1344**

### III.

*Sentencing Guideline Issues*

#### A. Applicability of the Exclusionary Rule

■ Reginald Peacock contests the inclusion of 103.79 grams of cocaine base (converted to 10,379 grams of cocaine for sentencing purposes) confiscated from his Delaware house. Robert McCoy testified at the first trial that he was with Peacock at the house and observed Peacock cooking up cocaine. When McCoy left the house, he immediately saw police officers and fled. The police then searched the house and found a mason jar containing the crack cocaine. Evidence concerning the mason jar of crack cocaine was admitted at the first trial, but the jury was unable to reach a verdict on the count involved. Prior to the second trial, Peacock moved to suppress the cocaine on the grounds that the search was unconstitutional. The district court agreed and suppressed the evidence. Both Peacock and Ralph Warren were acquitted on the charge involving this cocaine at the second trial.[7]

The district court included the crack cocaine in the total amount of cocaine attributable to the conspiracy for purposes of calculating defendants' offense levels under the sentencing guidelines. The court held that the exclusionary rule did not apply even though it had ruled that the search was unconstitutional. We agree.

The courts of appeals for four circuits have held that illegally seized evidence, though inadmissible at trial, may nonetheless be considered in determining a defendant's offense level. *United States v. Tejada*, 956 F.2d 1256, 1260–64 (2d Cir.), *cert. denied*, — U.S. —, —, 113 S.Ct. 124, 334, 121 L.Ed.2d 80 (1992); *United States v. Lynch*, 934 F.2d 1226, 1234–37 (11th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); *United States v. McCrory*, 930 F.2d 63, 67–69 (D.C.Cir.1991), *cert.*

*denied*, — U.S. —, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); *United States v. Torres*, 926 F.2d 321, 322–25 (3d Cir.1991). *See also United States v. Jessup*, 966 F.2d 1354 (10th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1398, 122 L.Ed.2d 772 (1993) (defendant properly denied two-point reduction for acceptance of responsibility based on information obtained by the government in violation of state law on medical privilege). *Contra United States v. Jewel*, 947 F.2d 224, 238–40 (7th Cir.1991) (Easterbrook, J., concurring). In reaching their conclusions, these courts have addressed both the objectives of the exclusionary rule and the deleterious effects of an overly broad application of that rule.

In *Tejada*, the Court of Appeals for the Second Circuit concluded that illegally seized evidence must be considered under the sentencing guidelines absent a showing that the police officers obtained the evidence expressly to enhance a sentence. The court followed the Supreme Court's instruction to balance the likelihood that excluding the evidence would deter illegal searches against the "considerable cost of excluding reliable information." *Tejada*, 956 F.2d at 1261 (citing *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 1165, 94 L.Ed.2d 364 (1987)).

> Physical evidence seized in violation of the Fourth Amendment—unlike an involuntary confession taken in violation of the Fifth Amendment—is inherently reliable.... As a result, balancing requires that we invoke the exclusionary rule only where our doing so will provide the systemic remedy of substantial deterrence.

*Tejada*, 956 F.2d at 1261 (citations omitted). The court was not willing to assume that allowing illegally obtained evidence to be considered at sentencing would provide greater incentives to police to violate the Fourth Amendment. *Id.* at 1262. Nor was the court willing to leave the consideration of such evidence to the discretion of the district

---

7. There is no merit to Peacock's contention that because he was acquitted on the substantive count involving the mason jar of crack cocaine, that cocaine should not have been included in the total amount of cocaine attributable to him. *United States v. Moreno*, 933 F.2d 362, 374 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 265,

116 L.Ed.2d 218 (1991). There is likewise no merit to his claims that he had no knowledge of the cocaine, and that there was no proof that the cocaine was part of the Ralph Warren conspiracy. The district court's findings on these issues are supported by a preponderance of the evidence and are not clearly erroneous.

courts, stating that such a rule would run counter to the sentencing guidelines' goal of avoiding disparities in sentencing. *Id.* at 1263.

In *McCrory,* the Court of Appeals for the District of Columbia stressed the need for the sentencing court to have the fullest information available to fashion the appropriate sentence, and noted that the sentencing guidelines provide that the sentencing court may consider, without limitation, any information concerning the background, character or conduct of the defendant. *McCrory,* 930 F.2d at 68. The court concluded that the deterrent effect of the exclusionary rule did not outweigh the "detrimental effects of excluding reliable evidence on the court's ability to achieve the goal of appropriate sentencing." *Id.* at 69. *Accord Torres,* 926 F.2d at 325; *Lynch,* 934 F.2d at 1236.

The approach of the courts which have addressed this issue differs in one important respect. In *Tejada,* the court set forth an exception to its conclusion that illegally seized evidence must be considered at sentencing, stating that evidence illegally seized *for the purpose of sentence enhancement* may not be so used. *Tejada,* 956 F.2d at 1263. In *McCrory, Torres* and *Lynch,* the courts expressly left open the question whether the exclusionary rule should apply in sentencing proceedings to evidence unconstitutionally seized *for the purpose of sentence enhancement. McCrory,* 930 F.2d at 69; *Lynch,* 934 F.2d at 1237 n. 15; *Torres,* 926 F.2d at 325.

■ Following the reasoned approach of these courts, we conclude that the district court was not required to exclude the mason jar of crack cocaine from the total amount of cocaine attributable to this conspiracy on the ground that the cocaine was obtained during

a search later found to be unconstitutional.[8] There is no indication in the record that this evidence was obtained to enhance defendants' sentences. Nor do any of the defendants advance this claim. On the facts of this case, inclusion of the crack cocaine was proper.

**B.** *Vincent Sample: Amounts of Cocaine Attributable Under Guideline Section 1B1.3*

■ Vincent Sample challenges the district court's conclusion that he is accountable for the total amount of cocaine involved in the conspiracy, 21.96 kilograms, based on the finding that Sample reasonably could have foreseen that the conspiracy was selling cocaine in this amount. Sample's base offense level was initially calculated at 34, and then reduced by two points for his minor role in the offense, resulting in a sentencing range of 121–151 months. The court imposed a sentence of 125 months.

The relevant conduct required to be considered by the district court at the time of sentencing was that set forth in U.S.S.G. § 1B1.3 (1989) and its accompanying commentary. That guideline defines relevant conduct to include acts or omissions for which the defendant would be otherwise accountable, that occurred during the offense of conviction, or were in furtherance of the offense. Application note 1 states that conduct for which a defendant is "otherwise accountable" includes conduct of others in furtherance of jointly undertaken criminal activity that was reasonably foreseeable by the defendant.

A district court's findings of fact on the amount of cocaine for which a defendant is to be held accountable are accepted by this

---

**8.** In *United States v. Nichols,* 979 F.2d 402, 410–11 (6th Cir.1992), *petition for cert. filed,* Apr. 23, 1993, two members of this court expressed in dicta their view that evidence illegally seized during the investigation or arrest of the crime of conviction should not be considered at sentencing. Unlike those judges, however, we are unwilling to assume that use of illegally obtained evidence will result in "a corresponding decrease in the deterrent effect of the exclusionary rule on unconstitutional law-enforcement practices." *Id.* 979 F.2d at 411.

A decision of one panel of this court binds all other panels. *United States v. Gilliam,* 979 F.2d 436, 437 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1856, 123 L.Ed.2d 478 (1993). Consequently, no panel may overrule a published opinion of a previous panel. *Watts v. Burkhart,* 978 F.2d 269, 270–71 n. 1 (6th Cir.1992). This rule does not extend to dicta, however. *Stockler v. Garratt,* 893 F.2d 856, 859 n. 2 (6th Cir.1990).

court unless the findings are clearly erroneous. *United States v. Wilson,* 954 F.2d 374, 376 (6th Cir.1992); *United States v. Walton,* 908 F.2d 1289, 1300–1301, (6th Cir.), *cert. denied,* 498 U.S. 906, 989, 990, 111 S.Ct. 273, 530, 532, 112 L.Ed.2d 229, 541, 542 (1990). The findings must generally be supported by a preponderance of the evidence. *Walton,* 908 F.2d at 1301. Further, we give deference to the district court's application of the sentencing guidelines to the facts. *Wilson,* 954 F.2d at 376 (citing 18 U.S.C. § 3742(e)).

Vincent Sample does not challenge the district court's finding of the total amount of cocaine attributable to the conspiracy. Rather, he contends that the only amount properly attributable to him is 7.19 grams, the amount of cocaine he sold to Michael Brown.[9] Sample claims he had no knowledge of, nor could he reasonably foresee, the quantity of cocaine which the district court found to be involved in the conspiracy.

A co-conspirator is not necessarily responsible for the total amount of cocaine involved in the conspiracy for purposes of establishing his base offense level. Rather, a participant is responsible for other conspirators' conduct only if that conduct was reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3, comment. (n. 1) (1989); *United States v. Sims,* 975 F.2d 1225, 1244 (6th Cir.1992), *cert. denied,* —— U.S. ——, ——, ——, 113 S.Ct. 1315, 1617, 1620, 122 L.Ed.2d 702 (1993); *United States v. Hodges,* 935 F.2d 766, 774 (6th Cir.), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 251, 317, 116 L.Ed.2d 206 (1991). In this case, the government conceded that the evidence did not show that Sample was a "major player," and that "he probably did not possess the same knowledge of the overall conspiracy as the other defendants." The government nonetheless contended that Sample "would have been aware that 5 to 15 kilograms were sold

by his co-conspirators or by him during the conspiracy period."

The district court marshalled the evidence supporting the conclusion that Sample "certainly could have reasonably foreseen that Ralph Warren's distribution network, of which he was a part, was selling cocaine in this quantity [the full 21.96 kilograms]." Based on this finding, the court concluded that the entire amount of cocaine was properly attributable to Sample for sentencing purposes.

The court's finding of foreseeability is not clearly erroneous. However, foreseeability is only one of the limitations on the ability of the court to charge one participant in a conspiracy with the conduct of the other participants. It has been argued that foreseeability alone provides scant practical limitation. "In the case of heroin and cocaine, each seller knows that every transaction requires an extensive network of importers and distributors handling large quantities." Stephen J. Schulhofer, *Excessive Uniformity—And How to Fix It,* 5 Federal Sentencing Reporter 169, 170 (1992). Another limitation on the court's ability to charge a defendant with the conduct of others is that the conduct must be in furtherance of the execution of the "jointly undertaken criminal activity."

The 1992 amendment to U.S.S.G. § 1B1.3 and its commentary "clarifies and more fully illustrates the operation of this guideline." U.S.S.G., App. C. amend. 439. We have previously looked to post-sentencing clarifying amendments to ascertain the proper interpretation and application of the guidelines. *United States v. French,* 974 F.2d 687, 699 (6th Cir.1992), *cert. denied,* —— U.S. ——, ——, 113 S.Ct. 1012, 1431, 122 L.Ed.2d 160 (1993); *United States v. Muhammad,* 948 F.2d 1449, 1457–58 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). We do so again in this case.

---

**9.** Sample also claims that because he was convicted of the lesser included offense of possession of the cocaine charged in count 18, the jury necessarily found he had no intent to distribute this cocaine, and this amount could not be added to the total amount charged in the conspiracy to distribute. This argument has no merit. The

standard of proof applicable to sentencing is preponderance of the evidence. The district court found by a preponderance of the evidence that the cocaine at issue, part of which had been cooked into cocaine base, was possessed with intent to distribute. This finding is not clearly erroneous.

Sentencing guideline section 1B1.3 (1992) provides that in the case of jointly undertaken criminal activity (whether or not charged as a conspiracy), the base offense level shall be determined on the basis of all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B). This version of the guideline incorporates the language of application note 1 to section 1B1.3 (1989), and does not reflect a change in the operation of the guideline. Application note 2 to section 1B1.3 (1992) states:

> Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") *is not necessarily the same as the scope of the entire conspiracy,* and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), *the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e.,* the scope of the specific conduct and objectives embraced by the defendant's agreement).

(Emphasis added.)

In this case, the district court did not address, implicitly or explicitly, the scope of the criminal activity Vincent Sample agreed to jointly undertake. Without such a finding, we lack an adequate basis on which to differentiate between Sample and other members of the Ralph Warren conspiracy. However, section 1B1.3, in both its 1989 format and as recently amended in 1992, instructs that differentiation between co-conspirators is required. For this reason, we reverse Vincent Sample's sentence and remand his case for resentencing, to give the district court an opportunity to address the criteria of U.S.S.G. § 1B1.3 and determine the scope of the criminal activity Vincent Sample agreed to undertake.

### Conclusion

It is apparent from the record in this case that the trials were difficult and required the best of judicial talent. Our system of justice is fortunate to have available to it the valuable services of its senior judges, in this case, Senior Judge William Thomas.

For the reasons stated herein, we conclude that the district court did not err in refusing to order the disclosure of the identity of the confidential informant, and decline to reverse the convictions of defendants Ralph Warren, Reginald Peacock and Vincent Sample on this basis. We **AFFIRM** the sentences of Ralph Warren and Reginald Peacock. We **VACATE** the sentence of Vincent Sample and **REMAND** his case for **RESENTENCING,** consistent with this opinion.

KEITH, Circuit Judge, concurring in part and dissenting in part.

While I concur in Sections ·I, II, III.B. of the majority opinion, I must dissent from this court's exclusionary rule analysis in section III.A. of the majority opinion.

It is axiomatic that the exclusionary rule applies to suppress the presentation of evidence seized in violation of the Fourth Amendment. Placing unnecessary emphasis on the subjective intent of police officers who seize evidence, the majority, however, concludes that this suppressed evidence may be utilized in the calculation of a sentence under the sentencing guidelines. The majority holds that, if it can be shown that the suppressed evidence was seized for the express purpose of enhancing the sentence, then the evidence should be excluded. Absent a showing that the police officers intentionally violated the fourth amendment, the majority rationalizes that the deterrence rationale of the exclusionary rule is not satisfied and thus the evidence may be used.

I disagree and find compelling Judge Easterbrook's discussion of the purpose and application of the exclusionary rule in *United States v. Jewel,* 947 F.2d 224, 238–40 (7th Cir.1991) (Easterbrook, J., concurring). There, Judge Easterbrook instructs:

> As for doctrine: the fourth amendment establishes an objective standard. I think it most unlikely that the Supreme Court will admit intent through the back door in deciding whether to apply the exclusionary rule. Application is categorical: the exclusionary rule applies, or it doesn't, to one or another juncture of litigation.... Not one of the Supreme Court's opinions implies

that the rule may apply when the police have one motive and dissolve when the police have a different one.... Evidence seized on the authority of a warrant is admissible unless the warrant was so weak that reliance was "objectively" unreasonable, or unless the officers procuring the warrant misrepresented or withheld material facts. Neither of the exceptions makes anything of intent. The exclusionary rule is a prophylactic: it applies across the board in situations where the incentives for the police and the deterrence provided by the rule are such that exclusion is required and without reference to what motivated the particular search in issue.

*Id.* at 239 (citations omitted).

By engaging in a subjective intent inquiry, the majority indeed makes "serious inroads" into the exclusionary rule and ultimately the protections afforded by the fourth amendment. *See id.* Specifically, the majority undermines the warrant requirement and lessens the general public's protection from unreasonable police seizures. Accordingly, I would remand the case for resentencing and exclude the illegally seized evidence from the calculation.