53 F.3d 332
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America Plaintiff-Appellee,
v.
Charles M. NALLIE, Defendant-Appellant.
 No. 94-3429.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1995.
 
 Before: BROWN, NORRIS, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is defendant Charles Nallie's second appeal of his sentence for conspiring to possess and distribute cocaine in violation of 21 U.S.C. Sec. 846. His first appeal resulted in our vacating and remanding his sentence so that the district court could determine his "jointly undertaken criminal activity."[1] United States v. Hood, slip op. 92-3532 at 19-20 (6th Cir. Jan. 6, 1994). The district court then did so, but unfortunately it did not rely on evidence that could properly support its conclusion. Nor has the United States, in its brief, indicated where in the record we might find this necessary evidence. Thus we must VACATE and REMAND the defendant's sentence once again for specific findings of fact, supported by evidence that we can review, of the defendant's jointly undertaken criminal activity.
 
 I.
 
 2
 The defendant was indicted with twenty-four others in 1991 for conspiring to distribute large quantities of cocaine and heroin in the Columbus, Ohio area. The defendant, along with Ryan Hood and Mario Gibbs, were the equivalents of mid-level associates in this criminal enterprise. The head of the conspiracy, Leslie "Uncle Lucky" Green, would front each of them a certain amount of cocaine, which they would either distribute to others for resale, or sell directly in one of their crack houses. A warrant for Nallie's arrest was issued in September of 1991, and he was arrested with Gibbs five months later.
 
 
 3
 Initially, the defendant pled innocent to the charges against him. Midway through trial, however, he switched his plea to guilty, with the understanding that he could challenge the amount of cocaine for which he was responsible for sentencing purposes.
 
 
 4
 At his first sentencing hearing, on September 18, 1992, the defendant specifically objected to the probation officer's finding that he could reasonably foresee that the conspiracy involved over eighteen kilograms of cocaine. The district court adopted all uncontested portions of the presentence report as its findings of fact and conclusions of law, J.A. at 171, including a determination that this conspiracy did not begin until sometime in 1989. J.A. at 113.
 
 
 5
 Only two persons testified at Nallie's first sentencing hearing; the person in charge of the investigation, Special Agent Tosi, and the defendant himself. Tosi testified that Gibbs, Hood, and Green, as well as some others, intentionally kept the defendant's role in the conspiracy small, mainly because of his lack of sophistication in dealing cocaine. J.A. at 178-79.
 
 
 6
 The defendant's testimony, on the other hand, dealt mainly with the purchase of various motor vehicles. First, his uncle bought him a motor scooter in the early summer of 1988 for $2,100. In August of 1988, Nallie put a $4,000 down payment on a Jeep Cherokee. In 1989, he traded in his Cherokee for a Corvette, and put down an additional $4,000. Finally, he purchased a Chevy Impala in the winter of 1989 for $1,076. He claimed that the majority of this money came from his summer job and relatives. On cross-examination, the defendant admitted that he was aware of the extensive drug activities of Green, Gibbs, and Hood.
 
 
 7
 The district court rejected the explanation concerning the cars, even though the scooter and Cherokee were purchased before the conspiracy allegedly began, and held that all the vehicles were purchased with drug proceeds from the conspiracy. J.A. at 214. Furthermore, the district court held that because the defendant was aware of his coconspirator's drug activities, he could reasonably foresee the amount of cocaine they were distributing. As stated, because this amount exceeded five kilograms, the defendant was sentenced to the statutory minimum of ten years. Nallie then brought his first appeal.
 
 
 8
 As noted above, a panel of this court upheld the reasonable foreseeability determination, but remanded the case for the limited purpose of determining the defendant's jointly undertaken criminal activity. In accordance with the remand, the district court held a second sentencing hearing on April 14, 1994. No evidence was presented at this hearing, only arguments. Nevertheless, the district court held that the defendant's jointly undertaken criminal activity involved 8.4 kilograms of cocaine, and it reinstated the defendant's original sentence. The plaintiff brought this second appeal.
 
 II.
 
 9
 Under the United States Sentencing Guidelines, two specific considerations limit a defendant's accountability for someone else's conduct: first, the defendant is only responsible for another's conduct that he can reasonably foresee; second, that conduct must be within the scope of the defendant's jointly undertaken criminal activity. United States Sentencing Commission, Guideline Manual Sec. 1B1.3(a)(1)(B) (Nov. 1992). In determining the scope of a defendant's jointly undertaken criminal activity, a district court may consider whether the defendant shared resources with his coconspirators. U.S.S.G. Sec. 1B1.3 n. 2(c)(6).
 
 III.
 
 10
 The question in this case is whether the district court clearly erred in determining that a preponderance of evidence supported its finding that the defendant's jointly undertaken criminal activity involved more than five kilograms. United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 489 U.S. 906 (1992).
 
 IV.
 
 11
 Like arguments of counsel, "a presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." United States v. Wise, 976 F.2d 393, 404 (8th Cir.1992) (en banc) (quotations omitted), cert. denied, 113 S.Ct. 1592 (1993); United States v. McMeen, --- F.3d ---- (6th Cir.1995) (holding that contested enhancement factors in a presentence report must be proved by reliable evidence). In this case, the defendant objected to the presentence report's factual findings concerning the amount of cocaine for which he was responsible. The government thus had to prove this by a preponderance of the evidence, regardless of the content of the presentence report.
 
 
 12
 In its decision upon remand, the district court held that a preponderance of the evidence did indeed show that the defendant's jointly undertaken criminal activity involved more than five kilograms. In making this finding, the court performed a two-step analysis. First, it stated that the defendant shared resources with Gibbs and Hood, and that Nallie's jointly undertaken criminal activity therefore included the activity of those two. Next, it concluded that the trio distributed 40% of the drugs involved in the total conspiracy. Because the conspiracy involved a total of twenty-one kilograms, the trio was thus responsible for 8.4 kilograms. In making this determination, the court relied on paragraphs 66-68 and 110 of the presentence report, holding that they were supported by a preponderance of the evidence. Paragraph 66 indicates that the three coconspirators pooled their resources; p 67 indicates that the three were responsible for approximately 40% of the conspiracy's cocaine; p 68 states that Nallie's role in the conspiracy was not as extensive as Gibb's and Hood's; and p 110 states that the trio collectively led a street force of over five persons in distributing cocaine.
 
 
 13
 There is, however, no evidence in the record before us to support the majority of these assertions in the presentence report. Moreover, the government cites no evidence from any other record to support this finding. The government mentions that the district court presided over two other cases related to this conspiracy, but it does not tell us what we are to do with that information. Government's Brief at 9 n. 2.[2]
 
 
 14
 The only evidence presented at Nallie's sentencing hearings was the testimony of Agent Tosi and the defendant Nallie, both of whom testified only at the first hearing. Agent Tosi testified that the defendant was probably kept in the dark as to the extent of the cocaine activities; Nallie testified that he was aware of some of the drug activities Green, Gibbs, and Hood. Just because, however, the defendant was aware of that criminal activity, that fact alone does not show it was within the scope of his jointly undertaken criminal activity. Otherwise, there would be little, if any, difference between "reasonable foreseeability" and "jointly undertaken criminal activity."
 
 
 15
 As for Nallie's purchase of various motor vehicles, the district court concluded that these cars were bought with drug proceeds. However, there is no connection between the purchase of the cars and the 8.4 kilogram amount settled on by the district court; for example, the district court did not translate the amount of money spent on cars into amounts of cocaine. Moreover, the purchases of the motor scooter and the Jeep Cherokee were in 1988, a year before this particular conspiracy apparently began. J.A. at 113.
 
 
 16
 In short, there is no indication from the record before us, other than the presentence report, that Nallie shared resources with Gibbs and Hood.[3] Thus, the district court's finding that the scope of Nallie's jointly undertaken criminal activity included the activities of Gibbs and Hood was not supported by the evidence.
 
 
 17
 Likewise, there is no evidence in the record supporting p 67 of the presentence report that the trio were responsible for 40% of the drugs in the conspiracy. In its brief, the government attempts to support the 40% figure by stating that "during the first sentencing, Special Agent Tosi ... indicated it was Ryan Hood who provided the forty percent distribution figure in estimating the portion which this 'trio' actually distributed." Government's Brief at 13. The government gives no citation for this statement, and it is not in the record before us. Thus, the district court's conclusion concerning the 40% distribution figure was also not supported by the evidence.
 
 V.
 
 18
 Finally, the district court sentenced the defendant to sixty months for money laundering to run concurrent with his cocaine sentence. There seems to be no question that this calculation was error. As we stated in our previous opinion:
 
 
 19
 Finally, Charles Nallie argues that the court erred in imposing a sixty month sentence for the money laundering conviction and the government does not contest this issue. The error, however, is of no import if on remand the district court finds that Nallie's jointly undertaken criminal activity means that he is responsible for over five kilograms, because the mandatory minimum on the conspiracy charge will result in incarceration beyond the erroneous sixty month term, which is to be served concurrently. On the other hand, if the district court determines Nallie's sentence on the conspiracy charge to be less than sixty months, it should correct the judgment to reflect the proper sentence on the money laundering charge.
 
 
 20
 United States v. Hood, slip op. at 21. We adopt this reasoning in the present opinion, and issue the same instructions to the district court.
 
 VI.
 
 21
 For the reasons set out above, we VACATE and REMAND the defendant's sentence for resentencing in accordance with this opinion.
 
 
 
 [1]
 As the panel which remanded the case pointed out, for sentencing purposes, there is a distinction between the amount of drugs which a defendant can reasonably foresee will be distributed by the conspiracy and the amount a specific conspirator jointly undertakes to distribute, and that both factors affect the sentence under the Guidelines. United States v. Jenkins, 4 F.3d 1338, 1346-47 (6th Cir.1993), cert. denied, 114 S.Ct. 1547 (1994); United States v. Okayfor, 996 F.2d 116, 120 (6th Cir.) (per curiam), cert. denied, 114 S.Ct. 238 (1993)
 
 
 [2]
 As we noted in our prior opinion in this case, it would have been acceptable for the district court to rely on evidence presented in the related trials, as long as it pointed to such evidence in its findings of fact. See United States v. Notrangelo, 909 F.2d 363, 365 (9th Cir.1990)
 
 
 [3]
 During the first sentencing hearing, the defendant conceded that $84,000 in drug proceeds should be attributed to him. J.A. at 209-10. A close examination of this statement, however, indicates that the defendant was arguing that the $84,000 should be attributed to him under a reasonable foreseeability analysis. There is no indication that the defendant conceded that the entire $84,000 was part of his jointly undertaken criminal activity