43 F.3d 1473
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas KENNEDY, Defendant-Appellant.
 No. 93-2533.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1994.
 
 Before: MILBURN and SUHRHEINRICH, Circuit Judges; and LAY*, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Thomas Kennedy appeals his jury convictions and sentence for conspiracy to possess with intent to distribute and to distribute phencyclidine ("PCP") in violation of 21 U.S.C. Secs. 846, 841(a)(1), and distribution of PCP in violation of 21 U.S.C. Sec. 841(a)(1). On appeal the issues are (1) whether the district court erred in admitting certain unspecified statements regarding PCP transactions involving a codefendant, and (2) whether the district court erred in calculating the amount of PCP to be attributed to defendant in determining the base offense level under the United States Sentencing Guidelines ("U.S.S.G."). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 According to the trial testimony of Special Agent Joseph T. Rannazzisi of the Drug Enforcement Agency, Rannazzisi was assigned to an investigation to act as an undercover agent to attempt a purchase of PCP from defendant Thomas Kennedy. On July 14, 1992, Rannazzisi and a confidential informant went to defendant's home in Detroit to attempt to make the purchase. Defendant, who did not personally have any PCP for sale, took Rannazzisi and the informant to another location where defendant obtained PCP on Rannazzisi's behalf in exchange for a flat fee for "middling" the deal. On August 26, 1992, Rannazzisi attempted to make another purchase from defendant. However, defendant did not want to do business at the time because he had been sleeping.
 
 
 3
 Rannazzisi further testified that on October 1, 1992, he went back to defendant's home and was met at the door by codefendant Kim Larkins. Defendant had been incarcerated on an unrelated matter, and Larkins was attempting to raise money for defendant's bond by selling PCP. Rannazzisi negotiated a deal with Larkins, and Larkins obtained PCP on Rannazzisi's behalf in exchange for a flat fee. On October 6, 1992, Rannazzisi made another purchase from Larkins. After a series of conversations about additional purchases, Rannazzisi and Larkins met again on October 14, 1992. While Rannazzisi and Larkins were negotiating the October 14 deal, a price dispute arose. During the price negotiations, defendant called Larkins from jail. Rannazzisi spoke with defendant and complained about Larkins' drug prices. Larkins then spoke with defendant, and afterwards, the price dispute was resolved. Larkins also agreed that she would not receive a fee for "middling" this transaction.
 
 
 4
 Rannazzisi testified that he planned a final undercover purchase from Larkins that would take place on November 3, 1992. By that time defendant had been released from jail, and he took over handling the transaction in Larkins' place. Defendant paged Rannazzisi to confirm the transaction and the purchase price previously set by Larkins. Defendant met Rannazzisi at Larkins' home and the three of them counted the purchase money together. Defendant then took Rannazzisi to the site where the deal was to take place, the residence of codefendant Larry McBride, and attempted to take the purchase money without delivering the PCP. When Rannazzisi delivered the purchase money, defendant and McBride were arrested. No PCP was recovered after the arrest.
 
 
 5
 McBride testified that he supplied PCP directly to defendant and Larkins over an 18-month period and gave them approximately 90 percent of the some 48 to 80 ounces of PCP he acquired from his sources in Las Vegas. McBride considered his relationship with defendant and Larkins to be strictly business, and he treated them as a team. At one time when defendant was in jail, Larkins made a three-way call to McBride and defendant to discuss a possible future purchase of PCP for out-of-town customers. Defendant asked McBride how he was doing, an inquiry McBride took to be a reference as to whether he still had access to PCP.
 
 
 6
 Larkins testified that she had never had a business relationship with defendant and that she planned on becoming engaged to marry him. Larkins claims that she initially contacted Rannazzisi to see if he would loan her money for defendant's bail and that the only way Rannazzisi would give her the money was for her to obtain drugs for him.
 
 B.
 
 7
 On November 17, 1992, a grand jury issued a six-count indictment, naming defendant in two of the counts. Count one of the indictment charged defendant with conspiracy to possess with intent to distribute and to distribute PCP in violation of 21 U.S.C. Secs. 846, 841(a)(1). Count two charged defendant with distribution of PCP in violation of 21 U.S.C. Sec. 841(a)(1). Defendant was arraigned and entered pleas of not guilty on November 24, 1992.
 
 
 8
 A jury trial commenced on July 6, 1993, and defendant was convicted of both counts on July 8, 1993. On November 30, 1993, defendant was sentenced to a term of 151 months imprisonment on each count with the terms to run concurrently, and supervised release for five years on each count with the terms to run concurrently. This timely appeal followed.
 
 II.
 A.
 
 9
 Defendant argues that the district court erred in admitting statements regarding PCP transactions involving codefendant Kim Larkins. Specifically, defendant asserts that certain unspecified hearsay statements made by Larkins to Rannazzisi were improperly admitted because the district court failed to make the foundational findings required by United States v. Enright, 579 F.2d 980, 986 (6th Cir.1978). Defendant concedes that no contemporaneous hearsay objection was made at trial regarding Rannazzisi's testimony of the hearsay statements. However, defendant asserts that this court should review the error because the admission of such statements constitutes plain error affecting substantial rights of defendant.
 
 
 10
 Under Enright, a coconspirator's statement is admissible if the district court concludes that a preponderance of evidence establishes: (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of that conspiracy, and (3) that the hearsay statement was made in the course of and in furtherance of the conspiracy. Enright, 579 F.2d at 986; accord United States v. Vinson, 606 F.2d 149, 152 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980). In making this preliminary determination as to admissibility, the district court may consider the content of the hearsay statements themselves to support the preponderance finding. Bourjaily v. United States, 483 U.S. 171, 177-78 (1987).
 
 
 11
 In this case, the district court admitted the coconspirator statements without specifically making the findings required by Enright. However, at no time did defendant object to the admission of the statements or request that the district court make Enright findings. The lack of Enright findings does not require reversal; thus, we review the admission of the statements for plain error. See United States v. Samour, 9 F.3d 531, 537 (6th Cir.1993) (reviewing for plain error the admission of alleged coconspirator statements where no objection was made at trial and the district court did not make on the record Enright findings); cf. United States v. Castro, 908 F.2d 85, 91 (6th Cir.1990) (ordering a limited remand for Enright findings where the district court neglected to make such a finding after having ruled that it would admit coconspirator statements pursuant to the Enright procedure).
 
 
 12
 Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 52(b) governs our review for plain error. United States v. Thomas, 11 F.3d 620, 629 (6th Cir.1993), cert. denied, 114 S.Ct. 1570, and cert. denied, 114 S.Ct. 1571 (1994). Under Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b); Thomas, 11 F.3d at 629. Rule 52(b) gives us only limited power to correct errors in a criminal proceeding that were not timely raised in the district court. United States v. Olano, 113 S.Ct. 1770, 1776 (1993). The Supreme Court has recently interpreted Rule 52(b) as imposing three requirements: (1) there must be an error; (2) the error must be plain, that is, clear or obvious; and (3) the plain error must affect substantial rights, which usually means that it is prejudicial because it affected the outcome of the district court proceedings. Id. at 1777-78; Thomas, 11 F.3d at 629-30. The defendant bears the burden of persuasion with respect to the third requirement. Olano, 113 S.Ct. at 1778. In Olano, the Court held that although Rule 52(b) is permissive, the court of appeals should not exercise its discretion to correct a forfeited error "unless the error ' "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." ' " Id. at 1776, 1779 (quoting United States v. Young, 470 U.S. 1, 15 (1985) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936))). Accordingly, " 'the plain error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." ' " United States v. Morrow, 977 F.2d 222, 226 (6th Cir.1992) (en banc) (quoting Young, 470 U.S. at 15 (quoting Atkinson, 297 U.S. at 160)), cert. denied, 113 S.Ct. 2969 (1993).
 
 
 13
 In this case, there was ample evidence of record to justify the admission of the statements regarding the transactions involving codefendant Larkins. The testimony of Rannazzisi regarding the transactions with Larkins, including the transaction where defendant seemed to resolve a price dispute between Rannazzisi and Larkins, coupled with the testimony of McBride that he supplied both defendant and Larkins and treated them as a "team," was sufficient evidence of the conspiracy. Thus, the coconspirator's statements were not improperly admitted. Moreover, defendant has not pointed to any specific statements that were prejudicial. Because defendant merely makes a general reference to "hearsay testimony regarding an alleged co-conspirator," Appellant's Brief at 9, we cannot say that the admission of the testimony at issue resulted in a miscarriage of justice. Thus, any error in admitting the testimony without Enright findings was not plain error.
 
 
 14
 Defendant also argues that the admission of the coconspirator statements violated his confrontation rights because the statements were not made by an "unavailable" witness. Defendant cites United States v. Inadi, 748 F.2d 812 (3d Cir.1984), in support of this proposition. This argument has no legal basis, however, because Inadi was reversed by the Supreme Court on the very point on which defendant relies. United States v. Inadi, 475 U.S. 387 (1986).
 
 B.
 
 15
 Defendant argues that the district court erred in calculating the amount of PCP to be attributed to him in determining his sentence. Specifically, defendant claims that the quantities of PCP purchased by Larkins were neither caused by nor reasonably foreseeable to him as required by U.S.S.G. Sec. 1B1.3(a)(1)(A)-(B) and thus should not have been attributed to him in determining the base level offense.
 
 
 16
 A district court's findings of fact as to the quantity of drugs for which a defendant is to be held accountable are accepted by this court unless the findings are clearly erroneous, and the findings need only be supported by a preponderance of the evidence. United States v. Jenkins, 4 F.3d 1338, 1346 (6th Cir.1993) (citation omitted), cert. denied, 114 S.Ct. 1547 (1994). "Further, we give deference to the district court's application of the sentencing guidelines to the facts." Jenkins, 4 F.3d at 1346. "The guidelines themselves provide that 'the [sentencing] court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.' " United States v. Silverman, 976 F.2d 1502, 1512 (1992) (en banc) (quoting U.S.S.G. Sec. 6A1.3), cert. denied, 113 S.Ct. 1595 (1993); see also United States v. Smith, 887 F.2d 104, 108-09 (6th Cir.1989) (stating that the sentencing court should consider all conduct that is part of the same course of conduct or part of a common scheme or plan as the offense of conviction). Moreover, a defendant may be sentenced based upon quantities of drugs attributable to his coconspirators if those quantities were "reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity." Jenkins, 4 F.3d at 1346 (citing U.S.S.G. Sec. 1B1.3 cmt., n. 1 (1989)); United States v. Moss, 9 F.3d 543, 552 (6th Cir.1993).
 
 
 17
 In this case, the presentence report attributed to defendant PCP in the amount of 40 ounces, which is equivalent to 1,134 grams or 1.134 kilograms. The district court accepted the presentence report's calculation of the quantity of PCP because it believed that a preponderance of the evidence clearly supported the conclusion that defendant was directly involved with Larkins in distributing the PCP and the finding that the sales by Larkins were reasonably foreseeable to defendant and in furtherance of the execution of the jointly undertaken criminal activity. At the sentencing hearing, the following facts were cited in support of this conclusion: (1) McBride dealt with Larkins and defendant as a team; (2) defendant called Larkins from jail and resolved a price dispute in a transaction between Larkins and Rannazzisi; and (3) upon being released from jail, defendant immediately took over the PCP business and concluded the November 3, 1992 transaction in Larkins' place. In addition, defendant undoubtedly knew of Larkins' PCP sales because Larkins' stated purpose in selling the PCP was to raise funds to bond defendant out of jail. Because there is adequate evidence to support the district court's conclusion as to the amount of PCP attributable to defendant for purposes of sentencing, the district court's finding is not clearly erroneous.
 
 III.
 
 18
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Circuit Judge for the Eighth Circuit, sitting by designation